UNITED STATES of America,
Appellee,

v.

Chaka Toure HUTCHINSON,
Appellant.

No. 01–3036.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 4, 2001.

Decided Nov. 6, 2001.

A.J. Kramer, Federal Public Defender, argued the cause and filed the briefs for appellant. Gregory L. Poe, Assistant Federal Public Defender, entered an appearance.

Patricia A. Heffernan, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Kenneth L. Wainstein, U.S. Attorney, and John R. Fisher, Roy W. McLeese III and Roderick L. Thomas, Assistant U.S. Attorneys.

Before: EDWARDS, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Chaka T. Hutchinson appeals his conviction for unlawful possession of a firearm and ammunition by a convicted felon on the ground that the district court erred in denying his motion to suppress evidence. He contends that the retention of his identification during a *Terry* stop extended his nonconsensual detention longer than was necessary to effect the purpose of the *Terry* stop, and therefore was unlawful, requiring suppression of the gun, the ammunition, and certain statements that he made. Because the district court did not address Hutchinson's argument that the scope and duration of the *Terry* stop was excessive in light of police retention of his identification, and hence there are no findings of fact essential to decide this legal issue, we remand the case to the district court.

**I.**

The police stopped Hutchinson at 13th and Monroe Streets, N.W., at about 12:40 a.m. on July 28, 2000. In following up a robbery, the police were investigating a stabbing incident that arose from the robbery and occurred at around 11:30–11:45 p.m. on July 27, 2000, at 13th and Kenyon Streets, N.W., which is approximately two to three blocks from Monroe Street. Around midnight, an eyewitness to the stabbing told Detective Hilliard that the person who had done the stabbing was a black male, 5'6" to 5'9" tall, wearing dark clothing, with a bush hair style pulled back and tied; the eyewitness observed the stabbing from about fifty yards away and from an elevated position. In response to the eyewitness's report, a lookout was broadcast, describing a black male in his twenties, about 5'8" tall wearing a dark shirt over dark pants and having a bush hair style tied back with a rubber band. The lookout stated that the subject was last seen walking eastbound in the 1200 block of Kenyon Street, N.W.

Hilliard first saw Hutchinson walking east on Monroe toward 13th Street. Hutchinson wore dark blue pants and a white shirt, and was carrying a shoulder bag. He was 28 or 29 years of age. His hair was in a bush hairstyle, pulled back and tied. Although Hutchinson is 6'3" tall, Hilliard, who is 5'10", thought at the time that Hutchinson was around 5'11" or 6' tall. Accompanied by one other officer, Hilliard stopped Hutchinson because he believed that he fit the description of the individual described in the lookout and no one else in the area matched the lookout. One of the officers told Hutchinson to put his hands on a fence, which he did. Hutchinson then asked "what was going on," and the officer responded that he matched a lookout. The officer patted down Hutchinson and found nothing. A third officer arrived at the scene shortly after Hutchinson was frisked. Hilliard then asked Hutchinson from where he was coming and to where he was going. Hutchinson said that he had just finished work at WPFW, a jazz radio station, and that he was on his way to a friend's house on Monroe Street. Hilliard was satisfied with Hutchinson's responses, and was "comfortable that this wasn't our suspect."

Hilliard, however, had obtained Hutchinson's identification, jotted it down in his notebook, and decided to run it through the "WALES" system. After determining that Hutchinson "wasn't our suspect," Hilliard started walking toward his cruiser to do the "WALES" check, when he said to Hutchinson, "You don't have a problem with the officer looking into your bag?" Hilliard asked about the bag because Hutchinson fit the lookout, having had time to take off a dark colored shirt, and the bag would have been a good place to hide the shirt and the knife. Hilliard testified that he was comfortable that Hutchinson did not appear to be the person for whom they were looking, but he could not

say for certain that Hutchinson was not the stabbing suspect without seeing if he had a dark shirt or a knife. Thus, he "just arbitrarily" asked Hutchinson about the bag to be sure he did not have "these articles" before he was released. When Hutchinson did not respond, it "sent back up the red flag" and Hilliard continued to his cruiser.

While still retaining Hutchinson's identification, Hilliard was in his cruiser for two to five minutes attempting to run the "WALES" check. Hilliard was unable to run the "WALES" check, however, and returned to where Hutchinson was standing with the two other officers and asked, "Do you have a problem with the officer looking in your bag?" Hutchinson began taking his bag off his shoulder. Hilliard asked, "What's wrong?" Hutchinson replied, "Well, you['re] going to lock me up anyway." Hilliard asked, "Well, what's wrong? You got a weapon or something in there?" Hutchinson replied, "Yeah, I have a gun." The police immediately arrested Hutchinson and took the bag. The bag contained a sawed-off shotgun. The transport officers observed Hutchinson attempting to conceal two shell casings in the transport vehicle. Another officer corroborated much of Hilliard's testimony.

Hutchinson, who was implicated in neither the stabbing nor the robbery that preceded it, filed a motion to suppress the gun, the ammunition, and his statements. He argued that the facts did not justify a *Terry* stop, because he did not fit the lookout description and was walking in the opposite direction at a time much later than the stabbing. He also argued that the *Terry* stop had exceeded the scope of the purpose of the stop, maintaining that the *Terry* stop constituted a custodial situation because Hilliard kept Hutchinson's identification, there were three officers present, and Hutchinson was commanded to let the police look in his bag. Further,

Hutchinson argued, because Hilliard was satisfied with Hutchinson's responses, there was no need for further investigation. Finally, Hutchinson argued that the police officers' questioning constituted custodial interrogation in violation of his Fifth Amendment rights. The government responded that the lookout was reliable, Hutchinson's location, age, race, dark pants and hair style justified the stop, there was only investigatory questioning that led to asking for consent to search the bag, which Hutchinson effectively gave, and, in any event, upon admitting he had a gun, there was probable cause to arrest him.

The district court denied the suppression motion. The court concluded that the description was sufficient for a stop two or three blocks away from the incident, and that because the stabbing involved a knife, a pat down and preliminary inquiry regarding the weapon were proper. The court found that no weapons were drawn, the police did not use loud voices, Hutchinson was not surrounded, and the stop was for a short duration on a public street. As to the identification, the court relied on *United States v. Jordan*, 958 F.2d 1085 (D.C.Cir.1992), for the standard, "[whether] there [is] a reasonable opportunity to review it," and concluded that the officers retained Hutchinson's identification for a reasonable period of time. Given the circumstances, the court concluded that it was a fair inference that Hilliard intended to return the identification to Hutchinson but for his admission to having a gun. Finally, the court concluded that Hutchinson was not in custody—that the encounter was a legitimate *Terry* stop—and that the questioning was reasonably related to the purpose of the stop.

Hutchinson thereafter pleaded guilty to unlawful possession on July 28, 2000, of a

firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

## II.

On appeal, Hutchinson does not contend that his initial stop was based on less than reasonable suspicion. Instead, he explicitly declined to challenge the stop's propriety at its inception in light of *United States v. Davis,* 235 F.3d 584 (D.C.Cir. 2000). Because Hutchinson does not challenge the lawfulness of his initial stop, the court has no occasion to decide whether the facts in the instant case rise to the level of reasonable suspicion present in *Davis* and required by the Supreme Court's *Terry* jurisprudence.

Hence, the only question on appeal is whether the scope and duration of the *Terry* stop were impermissible. Hutchinson contends that the retention of his identification for two to five minutes to run a "WALES" check, and the questioning that took place during and after that period, resulted in a detention that was both longer than necessary to carry out the purpose of the stop and beyond the scope of the purpose of the stop. Therefore, Hutchinson contends, his statements and the physical evidence seized from him during and after this time period must be suppressed.

In *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Supreme Court instructed that:

> an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

*Id.* at 500, 103 S.Ct. 1319 (citations omitted). In *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Court further stated that a "brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information," is permissible. *Id.* at 146, 92 S.Ct. 1921.

> Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obligated to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.

*Berkemer v. McCarty,* 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (footnotes omitted); *see also United States v. Gale,* 952 F.2d 1412, 1415 (D.C.Cir. 1992).

On appeal, Hutchinson contends that his detention exceeded its allowable limits because Detective Hilliard's suspicions based on the lookout had been dispelled, according to Hilliard's testimony, by the time Hutchinson made the incriminating statements. Hilliard testified that prior to attempting a "WALES" check, he was satisfied with Hutchinson's responses to his questions and that Hutchinson was not the subject of the lookout. Nonetheless, although the record is unclear when and what identification was obtained from Hutchinson, the police obtained Hutchinson's identification. There was no indication that there was anything wrong with Hutchinson's identification. Hutchinson maintains, moreover, that there was no evidence that a "WALES" check could have provided information that would have helped the police determine whether he was the stabbing suspect. Insofar as the

record reveals, retention of his identification for a "WALES" check bore no relation to the purpose of the stop, which was for a suspect in a stabbing earlier that night. No evidence was offered about what information can be obtained from the "WALES" system, much less what the "WALES" system is other than some sort of police database. Although running a computer check on a driver's license and registration is a lawful part of a traffic stop because of the public interest of the States in ensuring that only those qualified to do so are permitted to operate motor vehicles, see *Delaware v. Prouse*, 440 U.S. 648, 658, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), Hutchinson maintains that no such interest exists with regard to pedestrians. Finally, because Detective Hilliard testified that he had copied the information in his notebook, there was no need for him to retain Hutchinson's identification during the "WALES" check. In Hutchinson's view, the fact that the retention of his identification had nothing to do with the stop is shown by Hilliard's failure to explain why he needed to retain the identification for any purpose related to the stop.

■ The government's response is that Hutchinson has waived the argument that retention of his identification to run the "WALES" check exceeded the lawful scope of the *Terry* stop by failing to make it in the district court. *See* Fed.R.Crim.P. 12(f). We disagree. First, Hutchinson's motion to suppress challenged the scope of the investigative stop, citing both *Royer* and *Terry*. Second, Hutchinson elucidated this challenge at the suppression hearing, arguing that "[a]n investigative detention has to be reasonably related in scope to the circumstances which justified the interference in the first place. That's *Terry [v. Ohio]*, 392 U.S. [1,] 20[, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]." He also argued that because his match to the lookout description was so weak, the permitted scope and duration of the stop "narrowed consider-

ably." As part of his challenge to the scope and duration of the stop, he further argued: "A key fact is that Hilliard asks for and keeps [Hutchinson's] identification" and that this "alone is enough to turn this into a custodial situation." Although Hutchinson's terminology was not technically exact because "custodial situation" generally pertains to *Miranda* analyses whereas the issue here was the scope and duration of a *Terry* seizure, Hutchinson, by arguing that the officer's retention of his identification impermissibly turned the *Terry* stop into a custodial situation, a higher–level, more intrusive, Fourth Amendment event, was also necessarily arguing that the officer exceeded the permissible bounds of the *Terry* stop. *See United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *United States v. Laing*, 889 F.2d 281, 285 (D.C.Cir.1989). Third, the district court addressed the legal issue of whether the stop had exceeded its permissible bounds, and, relying on the legal standard in *United States v. Jordan*, 958 F.2d 1085 (D.C.Cir.1992), concluded that the retention of Hutchinson's identification was not temporally significant for purposes of the court's Fourth Amendment analysis. Although neither Hutchinson nor the district court focused clearly on the distinction between *Jordan*, in which the issue was whether retention of an identification would turn an otherwise consensual encounter into a seizure, *id.* at 1088–89, and this case, in which Hutchinson's identification was retained during a seizure, Hutchinson's citation to *Jordan* put the issue of whether retaining his identification had Fourth Amendment significance before the court, and the court seemingly understood that point because it addressed the issue.

It is true that the argument at the suppression hearing focused on whether Hutchinson was lawfully stopped initially, and whether his statements thereafter

were elicited in response to custodial interrogation. In his motion, Hutchinson argued that by the time he "told the officers that he had a gun, the statement was the product of an illegal seizure." The government's opposition acknowledged Hutchinson's claim that he was unlawfully seized, but did not address Hutchinson's impermissible scope argument or his reliance on *Royer.* It is also true that Hutchinson's motion could have stated more fulsomely the argument regarding the scope of the seizure, as counsel has done in his brief on appeal. But for the reasons noted, we conclude that Hutchinson adequately set forth both the legal ground and factual support for his objection, and accordingly, did not waive the scope and duration claim. *See United States v. Mitchell,* 951 F.2d 1291, 1296 (D.C.Cir.1991); *United States v. Bailey,* 675 F.2d 1292, 1294 (D.C.Cir.1982).

■ We nevertheless conclude that remand is required. Hutchinson's motion to suppress raised two separate legal questions. The first question was whether, under *Terry,* the police had articulable suspicion to stop Hutchinson for questioning. *See Royer,* 460 U.S. at 498, 103 S.Ct. 1319. The district court addressed this question, finding that the police had reasonable grounds to stop Hutchinson and, because the stabbing involved a knife, to pat him down and ask him questions in connection with the stabbing. The second question was whether Hutchinson's seizure was sufficiently limited in scope and duration to the circumstances that justified the interference with his liberty in the first place. *See Royer,* 460 U.S. at 500, 103 S.Ct. 1319; *Terry,* 392 U.S. at 19–20, 88 S.Ct. 1868. In order to answer the second question, the district court had to make factual findings regarding not only the length of time that Hutchinson was seized, i.e., held for investigative detention, but also whether at some point the investigative detention exceeded the purpose of the initial stop, *see Royer,* 460 U.S. at 500, 103

S.Ct. 1319; *United States v. Holt,* 264 F.3d 1215, 1229–30 (10th Cir.2001), and hence impermissibly extended the duration of the stop. In concluding that the duration of the stop was reasonable, however, the district court addressed the retention of Hutchinson's identification only in temporal terms. The district court also should have considered whether the temporal duration of the stop was unlawfully extended because the police pursued a means of investigation that was beyond the scope of the purpose of the stop. *See Sharpe,* 470 U.S. at 686, 105 S.Ct. 1568; *see also United States v. Machuca–Barrera,* 261 F.3d 425, 432 (5th Cir.2001). The district court did not, however, address whether the retention of Hutchinson's identification exceeded the permissible scope of the stop to investigate the stabbing, and thus unlawfully extended Hutchinson's seizure. Hutchinson did not argue in the district court that he was not required to surrender his identification, *see Oliver v. Woods,* 209 F.3d 1179, 1190 (10th Cir.2000) (citing *Kolender v. Lawson,* 461 U.S. 352, 361 n. 10, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)), and does not attempt to raise that issue now. But to address the argument he made regarding the scope and duration of his detention and the retention of his identification, the district court had to make findings regarding the purpose of retaining Hutchinson's identification, the purpose of the "WALES" check, and whether the information available from the "WALES" system could have assisted the police in determining whether Hutchinson was the stabbing suspect whom they were pursuing. Absent such findings, the court was not in a position to determine whether the government had met its burden to show that Hutchinson's seizure "last[ed] no longer than [wa]s necessary to effectuate the purpose of the stop." *Royer,* 460 U.S. at 500, 103 S.Ct. 1319. Under such circumstances, remand is appropriate. *See*

*United States v. Williams,* 951 F.2d 1287, 1291 (D.C.Cir.1991); *see also United States v. Hill,* 131 F.3d 1056, 1060 (D.C.Cir.1997).

Accordingly, we remand the case to the district court for further factual development about the "WALES" check, and a determination whether retention of Hutchinson's identification for the purpose of running the "WALES" check was related to the purpose of the stop or caused the stop to go on for too long, thereby tainting the evidence and statements obtained by the police after the attempted "WALES" check.