# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 9, 2004          Decided January 18, 2005

No. 04-3008

UNITED STATES OF AMERICA,
APPELLEE

v.

DARRELL HEWLETT,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 03cr00139-01)

———

*Neil H. Jaffee*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A. J. Kramer*, Federal Public Defender.

*Susan A. Nellor*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *John R. Fisher* and *Thomas J. Tourish, Jr.*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, GARLAND, *Circuit Judge,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Defendant Darrell Hewlett contends that the district court should have granted his motion to suppress a firearm and ammunition on the ground that the evidence was seized from him in the course of an unlawful arrest. Because we conclude that Hewlett's arrest was lawful, we reject his contention and affirm his conviction.

I

In April 2002, FBI Special Agent Kevin Ashby received a tip from a reliable informant that Hewlett was a fugitive who was wanted for murder in Prince George's County, Maryland. Ashby ran Hewlett's name through the National Crime Information Center database, which confirmed the existence of an outstanding arrest warrant for Hewlett. He then notified the FBI office with jurisdiction over Prince George's County.

Approximately eleven months later, on March 13, 2003, the same informant called Ashby to tell him that Hewlett was, at that moment, eating lunch at a McDonald's restaurant near the MCI Center in downtown Washington, D.C. Ashby and his partner, Special Agent Robert Lockhart, drove from their location on South Capitol Street, S.E., to the restaurant. Along the way, they picked up two Metropolitan Police Department (MPD) officers at MPD headquarters. The trip from MPD headquarters to the McDonald's took five to ten minutes.[1] The agents did not attempt to confirm the continued validity of the warrant while they were en route.

When they arrived at the restaurant, Ashby and Lockhart approached Hewlett, handcuffed him, and told him that he was under arrest. Ashby then frisked Hewlett, discovering a loaded,

---

[1]The record does not indicate how long it took Ashby and Lockhart to drive from South Capitol Street to MPD headquarters.

9mm SIG-Sauer pistol in the front waistband of his pants and a loaded ammunition magazine in his pocket. After Ashby arrested Hewlett, the police officers called their dispatcher, who checked and confirmed that the Prince George's County arrest warrant was still outstanding.

Hewlett was charged with unlawful possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the gun and ammunition seized by Ashby on the ground that the information known to the arresting officers was "insufficient to establish probable cause to arrest the defendant." Mot. to Suppress Physical Evidence 3. The district court denied the motion, finding that Ashby's knowledge of the Prince George's County murder warrant gave him probable cause to arrest Hewlett. After losing his motion, Hewlett entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2), reserving his right to take this appeal.

On appeal, Hewlett raises two challenges to the denial of his motion to suppress. We consider them in Parts II and III below.

II

In *Chimel v. California*, the Supreme Court held that, in the course of making a lawful arrest, a police officer may "search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." 395 U.S. 752, 763 (1969); *see United States v. Robinson*, 414 U.S. 218 (1973). Hewlett's first contention is that the search that yielded the gun and ammunition was unlawful because the arrest itself was unlawful. The arrest was unlawful, he argues, because the government never proved that the Prince George's County arrest warrant was supported by probable cause to believe that Hewlett had committed a crime.

He cites *United States v. Hensley*, 469 U.S. 221 (1985), and *Whiteley v. Warden*, 401 U.S. 560 (1971), for the proposition that "when evidence is uncovered during a search incident to arrest in reliance" on an arrest warrant procured by other officers, the constitutionality of the search "turns on whether the officers" who obtained the warrant "possessed probable cause to make the arrest." *Hensley*, 469 U.S. at 231; *see Whiteley*, 401 U.S. at 568.

The government responds that Hewlett waived the argument that the warrant was unsupported by probable cause when he failed to present it to the district court. We agree. Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure requires a party to make any motions to suppress evidence in advance of trial, and Rule 12(e) provides that the failure to make "any Rule 12(b)(3) defense, objection, or request" by the pretrial deadline constitutes a waiver. We have held that, "while a pretrial motion need not state explicitly the grounds upon which a motion is made, it must contain facts and arguments that make clear the basis of defendant's objections." *United States v. Mitchell*, 951 F.2d 1291, 1296 (D.C. Cir. 1991) (internal quotation marks omitted).

In *Mitchell*, the defendant argued on appeal that the car search that yielded evidence against him was invalid because it was conducted without a warrant. The defendant had failed to make that argument in his motion to suppress, contending instead that the search was invalid because the police lacked probable cause. *Mitchell*, 951 F.2d at 1297. Since neither Mitchell's motion to suppress nor the record of the suppression hearing contained "any discussion of whether a warrant was necessary," we concluded that he had waived the argument under Rule 12. *Id.*

*Mitchell* governs this case. Hewlett's motion to suppress did not suggest, much less "make clear," *id.* at 1296, that he was objecting to the admission of the evidence on the ground that the Prince George's County *warrant* was unsupported by probable cause. Rather, he argued exclusively that the arresting officers *themselves* had neither probable cause for an arrest nor reasonable suspicion for a *Terry*[2] stop, focusing in particular on the officers' failure to reconfirm the status of the warrant before making the arrest. *See* Mot. at 3, 9.

Hewlett disputes the conclusion that he waived his challenge to the Prince George's County warrant, noting that his suppression motion contained citations to both *United States v. Hensley* and *Whiteley v. Warden*. But while the cases were there, the proposition for which they were cited was different from that urged here. *See* Mot. at 5-6 (citing *Hensley* and *Whiteley* for the proposition that "[t]he police may rely on hearsay information concerning *past* conduct in making stops" (emphasis in original)). Because Hewlett never suggested that there was any flaw in the support for the warrant -- indeed, even on appeal he does not say in what manner it was deficient -- the district judge would have to have been a mind reader to deduce that Hewlett was citing *Hensley* and *Whiteley* to advance such an argument. Although we expect many things of our district judges, telepathic powers are not among them.

Moreover, Hewlett's appellate brief effectively concedes that Hewlett's trial attorney did not have in mind a challenge to the validity of the warrant in the first place, because he did not "recogniz[e]" that, under *Whiteley*, the validity of the arrest could turn on whether there was probable cause to support the warrant. Reply Br. at 1-2. Perhaps that was the reason trial counsel did not attack the warrant -- or perhaps it was because

---

[2]*See Terry v. Ohio*, 392 U.S. 1 (1968).

he had no basis for doing so. In either event, the challenge was not made in the district court and is therefore waived.

### III

Hewlett's second contention is that his arrest was invalid because the arresting officers lacked probable cause to believe he had committed a crime. Hewlett did make this argument in his suppression motion, *see* Mot. at 3, and he therefore properly preserved it for appeal. But because he waived his challenge to the validity of the Prince George's County warrant, Hewlett is limited to arguing that his arrest was unlawful notwithstanding the validity of the warrant. Hewlett cites no case (and we have found none) in which a court has concluded that an arrest lacked probable cause despite the existence of a valid warrant.

An arrest warrant may be issued only if "the judicial officer issuing such a warrant [is] supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." *Whiteley*, 401 U.S. at 564. Police officers who arrest a suspect based on a warrant that they did not themselves seek "are entitled to assume that the officers" who did obtain the warrant "offered the magistrate the information requisite to support an independent judicial assessment of probable cause." *Id.* at 568; *see Hensley*, 469 U.S. at 231-32. It is only "[w]here . . . the contrary turns out to be true" that a Fourth Amendment violation occurs. *Whiteley*, 401 U.S. at 568.[3]

---

[3]In *Arizona v. Evans*, the Supreme Court stated that "*Whiteley* clearly retains relevance in determining whether police officers have violated the Fourth Amendment." 514 U.S. 1, 13 (1995). The Court noted, however, that "a Fourth Amendment violation" is not necessarily "synonymous with application of the exclusionary rule to evidence secured incident to that violation." *Id.* (citing, e.g., *United States v. Leon*, 468 U.S. 897 (1984)).

Despite the (assumed) validity of the warrant in this case, Hewlett contends on appeal -- as he did in the district court -- that Agent Ashby and the other arresting officers lacked probable cause because eleven months had passed since Ashby confirmed the existence of the warrant. *See* Mot. at 3 (contending that "the failure to [re]confirm the existence of the warrant . . . deprived the police of probable cause"). During that time, Hewlett argues, the warrant could have been quashed, withdrawn, or executed.[4] Those possibilities, he insists, diminished the original support for the belief that he had committed a crime (or at least a crime for which he had not yet been arrested, punished, or cleared).

Perhaps they did. But under the circumstances of this case, we cannot conclude that the passage of eleven months so diminished that support as to reduce it below the level of probable cause.[5] The nature of the charge (murder) and the relative brevity of the elapsed time period eliminate some possibilities that might otherwise have been relevant. For example, it was quite unlikely that Hewlett already had been

---

[4]Although the Maryland Code requires that a search warrant be executed within a specified number of days after its issuance, MD. CODE ANN., CRIMINAL PROCEDURE § 1-203(a)(4) (2004) (no more than 15 days), the Code does not require execution of an arrest warrant within any specific time period, *see* MD. CODE ANN., COURTS AND JUDICIAL PROCEEDINGS § 2-107 (2004); MD. CODE ANN., CRIMINAL PROCEDURE § 2-103 (2004). The same is true of the Federal Rules. *Compare* FED. R. CRIM. P. 41(e)(2)(A) (requiring execution of search warrants within 10 days), *with* FED. R. CRIM. P. 4(c) (specifying no time period for execution of arrest warrants).

[5]Because the government does not dispute that the passage of *some* length of time without reconfirmation of the warrant's existence could have invalidated the arrest, we assume without deciding that to be so.

convicted and served his time, or had been tried and acquitted, in just eleven months. It was also relatively unlikely that he had been arrested and released on bond, given the nature of the charge against him. Nor could the warrant have been quashed on statute of limitations grounds, as Maryland has no statute of limitations for murder. *See Greco v. State*, 499 A.2d 209, 213 (Md. Ct. App. 1985). And while it remained possible that the warrant had been quashed or withdrawn on other grounds, the implication of the informant's tip was to the contrary. It was thus reasonable for the arresting officers to believe that the warrant, and the finding of probable cause that it evidenced, remained valid in March 2003. Accordingly, Hewlett's arrest and the search incident thereto were lawful.

## IV

We conclude that Hewlett's arrest was lawful, and therefore affirm the district court's denial of his motion to suppress the evidence seized from him incident to that arrest. The judgment of conviction is

*Affirmed.*