Opinion for the Court filed by Circuit Judge GRIFFITH.
Dissenting opinion filed by Circuit Judge HENDERSON.
GRIFFITH, Circuit Judge:
Appellant Davon Peyton challenges the district court’s ruling that evidence the police gathered from his apartment during two warrantless searches could be used against him at trial. For the reasons set forth below, we reverse in part, vacate in part, and remand the case to the district court.
I
Peyton and his 85-year-old great-great-grandmother, Martha Mae Hicks, shared a small, one-bedroom apartment in a complex at 401 K St. NW, Washington, D.C. Both were named as residents on the lease. Hicks used the bedroom, and Pey-ton kept his bed and belongings in the living room. On June 21, 2009, police officers arrested Peyton in the parking lot outside the apartment complex for possession of crack cocaine. Five days later, the police obtained and executed a search warrant for the apartment. The search yielded no evidence against Peyton, but resulted in the arrest of several people who were in the apartment at the time with drugs and drug paraphernalia.
Shortly thereafter, the police received a tip that Peyton was using the apartment to deal drugs. Four officers, including one who had participated in the earlier warrant search, returned to the apartment on July 14, this time without a warrant. The officers knew Peyton had recently been arrested yet again (the record is not clear why) and would not be there. They hoped that Hicks would consent to the search. When the police knocked on the door, Pey-ton’s girlfriend, Tyra Harvey, answered. They asked to speak with Hicks, and Harvey told them that she was in the bedroom. While two officers waited just inside the entryway, two others entered the bedroom through its open door only a few steps away and found Hicks sitting on the bed.
The officers told Hicks that they believed there might be drugs in the apartment and wanted her permission to conduct a search. They presented Hicks with a consent form, which she signed, that stated she was freely agreeing to let the police search the entire apartment. The search began in the living room. According to one of the officers, as they came near Peyton’s bed, Hicks told them that that part of the living room was “the area where [Peyton] keeps his personal property.” Def.’s Ex. 6, Aff. ¶ 7, United States v. Peyton, Crim. No. 10-15 (D.D.C. July 22, 2010) (search warrant affidavit). One of the officers saw a closed shoebox next to Peyton’s bed and picked it up. When he opened the shoebox, he smelled marijuana. *550 Inside the shoebox, he found more than 25 grams of marijuana, 70 grams of crack cocaine, and $4000 in cash. The officers then searched the adjoining kitchen, where they discovered two plates and a razor blade covered with a white residue in the cabinets.
Relying on the evidence found in the shoebox during the July search, a grand jury issued an indictment against Peyton on January 12, 2010, for possession with intent to distribute 50 grams or more of crack cocaine and a detectable amount of marijuana. On January 20, four police officers returned to the apartment with an arrest warrant in hand. Peyton answered the door and was immediately handcuffed. A protective sweep of the apartment found Hicks in the bedroom and Harvey and an unidentified male in the living room. Smelling a strong odor of marijuana, the officers asked Hicks for permission to conduct a full search of the apartment. She agreed and signed a consent form. Present throughout the search, Peyton did not object. The officers found crack cocaine, marijuana, and a handgun in the kitchen cabinets.
Armed with this new evidence, on January 26, 2010, the grand jury issued a superseding indictment against Peyton that restated the original charges but also added three more: possession with intent to distribute crack cocaine, possession with intent to distribute marijuana, and possession of a firearm in furtherance of a drug trafficking offense.
In the district court, Peyton moved to suppress all of the evidence discovered during the warrantless searches in July 2009 and January 2010. Hicks testified for Peyton at the hearing on his motion. The government put on one police officer to testify about the July search and another to address the January search. Hicks and the officer gave slightly different accounts of the scope of the search Hicks authorized in July. Although Hicks did not dispute that she freely signed the form, her memory was that the police had asked to search only the living room. The officer remembered that Hicks had agreed to their search of the entire apartment. Hicks and the other officer gave consistent accounts of the scope of the January search. They both remembered that Hicks had read and signed the consent form, and neither said that Hicks had limited the search’s scope.
Peyton challenged both searches on the ground that “Ms. Hicks did not have common authority over the area to be searched.” Transcript of Motions Hearing at 95, United States v. Peyton, Crim. No. 10-15 (D.D.C. July 22, 2010) (7/22/2010 Hr’g Tr.). The district court rejected this argument, concluding, as to the July search, that Hicks had authority to consent to the search of the entire apartment and that she voluntarily agreed to a search of the living room but not the kitchen. Accordingly, the district court ruled all the evidence seized admissible except for that found in the kitchen. As to the January search, the district court found that Hicks’s consent was voluntary and covered the entire apartment. All the evidence found in January was held admissible.
In the wake of the district court’s decision, Peyton pled guilty to possession with intent to distribute a detectable amount of cocaine base (a lesser included offense of the charge based on the crack found in the shoebox) and the weapons charge, but he reserved the right to appeal the denial of his motion to suppress. Peyton and the government agreed to a sentence of 84 months, and the district court accepted the deal.
We have jurisdiction over Peyton’s appeal under 28 U.S.C. § 1291. We review the district court’s legal rulings de novo *551 and its factual findings for clear error. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); United States v. Holmes, 505 F.3d 1288, 1292 (D.C.Cir.2007).
II
As to the July 2009 search, we agree with Peyton that Hicks could not lawfully permit the police to search his closed shoebox. Concluding the search was unlawful on this ground, we need not take up Pey-ton’s other arguments that Harvey lacked authority to let the police enter in the first place and that Hicks did not voluntarily agree to the search.
A
The government contends that Peyton has waived his argument about the shoebox because he did not raise it at the suppression hearing.
An argument to suppress evidence not made before trial is waived, which means that absent good reason for not raising the argument at the district court, the appellant cannot ask us to consider the matter. Fed.R.Crim.P. 12(b)(3), (e); cf. United States v. Weathers, 186 F.3d 948, 957 (D.C.Cir.1999). Given the serious consequence of waiver in a criminal proceeding, it is fitting that defendants are able to preserve a suppression argument simply by “stat[ing] the basis of their objection to the admission of the evidence” before the district court. United States v. Mitchell, 951 F.2d 1291, 1297 (D.C.Cir.1991). In doing so, they “need not articulate the entire body of law relevant to their claim,” id., or expound their argument as “fulsomely” as they might in an appellate brief, United States v. Hutchinson, 268 F.3d 1117, 1121-22 (D.C.Cir.2001).
The government acknowledges that Peyton disputed Hicks’s authority to allow a search of the living room, but contends that his failure to raise the “separate issue” of Hicks’s authority over the shoebox means he waived that point. Appellee’s Br. 30. Our dissenting colleague agrees, see Dissenting Op. at 561 n. 5, but we think this is too stingy a reading of what Peyton argued. At the suppression hearing, his counsel maintained that “for both searches Ms. Hicks did not have common authority over the area to be searched and therefore her consent was invalid.” 7/22/2010 Hr’g Tr. 95. When asked to elaborate, his counsel explained “that that area that was searched or that the officers requested permission to search was Da-von’s — the Defendant’s area of where he slept and kept his belongings, and it’s more than that. It’s — that’s his home as well.” Id. Peyton’s argument was not only about the living room in its entirety. It was also about the portion of the living room that Peyton claimed and Hicks acknowledged was uniquely his. The district court recognized that Peyton’s argument raised the issue of “whether [Hicks] had authority to consent to the search of the area where the Defendant’s belongings were located.” Transcript of Motions Hearing at 11, United States v. Peyton, Crim. No. 10-15 (D.D.C. July 27, 2010) (emphasis added). Peyton did not need to emphasize that the evidence was inside the shoebox; that fact was obvious and undisputed.
In the end, Peyton presses the same legal theory on appeal that he raised below: Hicks lacked authority to allow the search of the place the evidence was found. The cases where we have found waiver of arguments under Rule 12, by contrast, involved defendants raising wholly new claims or switching legal theories on appeal. See, e.g., United States v. Hewlett, 395 F.3d 458, 460 (D.C.Cir.2005) (defendant who argued below that police lacked *552 probable cause for warrantless arrest could not argue on appeal that arrest warrant was defective); Mitchell, 951 F.2d at 1297 (defendant who argued below that police lacked probable cause to search could not argue on appeal that police lacked warrant); United States v. Bailey, 675 F.2d 1292, 1294 (D.C.Cir.1982) (defendants who argued below that joinder was impermissibly prejudicial could not argue on appeal that joinder violated Federal Rule of Criminal Procedure 8(b)); see also 6 Wayne R. LaFave, Searoh And Seizure § 11.1(a), at 12-13 & n. 29 (5th ed.2012) (collecting cases). Finding no waiver of Peyton’s argument, we turn to its merits.
B
“At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.” Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). A warrantless search is the quintessential intrusion and is presumptively unreasonable. The government can rebut that presumption by showing that the police, despite lacking a warrant, were permitted to undertake the search by someone with authority. See Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Such consent need not come from the target of the search. It may come from “a third party who possessed] common authority over ... the premises or effects sought to be inspected.” United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). “Common authority” does not refer to some kind of “technical property interest.” Georgia v. Randolph, 547 U.S. 103, 110, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). It arises simply from
mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
Matlock, 415 U.S. at 171 n. 7, 94 S.Ct. 988. Even a person who does not actually use the property can authorize a search if it is reasonable for the police to believe she uses it. See Rodriguez, 497 U.S. at 186, 110 S.Ct. 2793. Such “apparent authority” is sufficient to sustain a search because the Fourth Amendment requires only that officers’ factual determinations in such situations “always be reasonable,” “not that they always be correct.” Id. at 185, 110 S.Ct. 2793. We review de novo whether an officer’s belief that a consenting individual has actual authority is reasonable. United States v. Law, 528 F.3d 888, 904 (D.C.Cir.2008) (per curiam).
The fact that a person has common authority over a house, an apartment, or a particular room, does not mean that she can authorize a search of anything and everything within that area. As we held in Donovan v. A.A. Beiro Construction Co., “While authority to consent to search of a common area extends to most objects in plain view, it does not automatically extend to the interiors of every enclosed space within the area.” 746 F.2d 894, 901-02 (D.C.Cir.1984); see also United States v. Karo, 468 U.S. 705, 725, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (O’Connor, J., concurring in part and concurring in the judgment) (“A homeowner’s consent to a search of the home may not be effective consent to a search of a closed object inside the home.”). This principle flows logically from the way people live in shared spaces. Two may agree to share a *553 room, such that neither could object to the other allowing a third party to enter, but they often retain private interior spaces — a closet, a footlocker, a dresser drawer— that they do not let the other use and that they do not assume the other will allow a third party to inspect. See United States v. Davis, 332 F.3d 1163, 1169 n. 4 (9th Cir.2003) (“By staying in a shared house, one does not assume the risk that a housemate will snoop under one’s bed, much less permit others to do so.”).
At first, this limitation on the scope of common authority might seem to put the police in a bind. Must an officer, having determined that a person has common authority over an apartment, separately confirm her authority over every closed container in the apartment before relying on her consent to conduct a search? No, for in many instances the person’s common authority over the larger area (say, the living room) will make it reasonable for the police to believe that she shares use of its closed containers (say, the drawers of the television stand). She will have apparent authority over those spaces. This is the same point we made in Donovan, where we explained how to identify the types of containers over which common authority appears to extend: “The rule has to be one of reason that assesses the critical circumstances indicating the presence or absence of a discrete expectation of privacy with respect to the particular object: whether it is secured, whether it is commonly used for preserving privacy, etc.” 746 F.2d at 902 (quoting United States v. Block, 590 F.2d 535, 541 n. 8 (4th Cir.1978)); see also United States v. Basinski, 226 F.3d 829, 834-35 (7th Cir.2000) (using similar factors in analyzing apparent authority over closed containers).
The district court’s conclusion that Hicks had common authority over the living room generally does not answer the critical question here: Did she have authority over the shoebox?[1] There is no evidence that Hicks either shared use of the shoebox with Peyton or had permission to do so, and the government does not argue that she had actual authority. Instead, the government invokes Donovan to suggest that Hicks had apparent authority, emphasizing three circumstances that suggest Peyton did not retain a privacy interest in the shoebox. The living room where he slept remained a common area, with a diminished expectation of privacy for things left there. Peyton took no special steps to hide or protect the shoebox. And a shoebox is not “the type of container that has historically been accorded the highest privacy expectations.” Appellee’s Br. 34.
Standing alone, these circumstances might suggest that the shoebox was not a private space and that it was reasonable for the police to believe that Hicks’s authority over the living room also encompassed the shoebox. But these were not the only circumstances the police were aware of. They knew that Hicks and Pey-ton both lived in the small apartment, and they were thus on notice that some spaces in the apartment might be used exclusively by Peyton. Indeed, the officer who opened the shoebox had been inside the *554 apartment during the earlier warrant search and knew that Peyton’s bed was in the living room. But most critically, according to the sworn account of that very officer, Hicks told the police that Peyton kept his “personal property” in the area around the bed, where the shoebox was found. In light of this clear statement that there was an area of the room that was not hers, it was not reasonable for the police to believe that Hicks shared use of the closed shoebox. Hicks lacked apparent authority to consent to its search. Cf. United States v. James, 353 F.3d 606, 615 (8th Cir.2003) (“It cannot be reasonable to rely on a certain theory of apparent authority, when the police themselves know what the consenting party’s actual authority is....”).
Our decision in United States v. Whitfield, 939 F.2d 1071 (D.C.Cir.1991), bolsters our conclusion. In Whitfield, FBI agents investigating a bank robbery sought a mother’s permission to search her adult son’s bedroom in the family home. Id. at 1072-73. The district court ruled that the mother had apparent authority to allow the search. We reversed, holding that the mother had not told the agents enough about her use of the son’s room for them reasonably to believe she had common authority:
[T]he government’s burden to establish that a third party had authority to consent to a search ... cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to “mutual use” by the person giving consent, “then warrantless entry is unlawful without further inquiry.”
Id. at 1075 (quoting Rodriguez, 497 U.S. at 188-89, 110 S.Ct. 2793) (emphasis added in Whitfield). Apparent authority does not exist where it is uncertain that the property is in fact subject to mutual use.[2] Hicks’s statement that Peyton kept his personal property in the area around the bed did more than create such uncertainty: it strongly suggested she did not use the shoebox or have permission to do so. The police should not have searched the shoebox without first making further inquiry to determine whether Hicks had authority. See United States v. Taylor, 600 F.3d 678, 680-85 (6th Cir.2010) (concluding that resident did not have apparent authority to consent to search of shoebox in spare-bedroom closet where circumstances created ambiguity regarding mutual use).
Some circuits have not followed Whitfield’s logic that ambiguity is enough to defeat apparent authority in cases involving closed containers in shared spaces. See Taylor, 600 F.3d at 685-86 (Kethledge, J., dissenting) (noting divergent approaches to consent searches of closed containers). The Seventh Circuit, for instance, has concluded that the risk of uncertainty in these situations should be borne by the defendant, not the police. A person with common authority over the premises is presumed to have authority over closed containers found there unless the police receive “positive information” to the contrary. United States v. Melgar, 227 F.3d 1038, 1041 (7th Cir.2000). Similarly, the Second Circuit has held that a lessee has authority to consent to the search of all closed containers within an apartment except those that “obviously” belong to someone else. United States v. *555 Snype, 441 F.3d 119, 136 (2d Cir.2006). But even these standards would not compel a different outcome here. Hicks’s statement to the officers, combined with their knowledge of the shared living arrangement between Peyton and Hicks, was “positive information” that arguably made it “obvious” that the closed shoebox belonged specifically to Peyton.
Nor is our conclusion that Hicks lacked authority undermined by United States v. Harrison, 679 F.2d 942 (D.C.Cir.1982). In Harrison, the defendant’s wife discovered boxes of marijuana in an area of their basement that both used to store personal items. She called the police and asked them to remove the marijuana, which they did without a warrant. Id. at 945, 947. When the defendant sought to suppress the evidence, we held that, under the Supreme Court’s reasoning in Matlock, the wife’s common authority over the basement storage area gave her “full authority to release the boxes of marijuana into police custody.” Id. at 947. Harrison’s reasoning on this point is not entirely clear, in part because the opinion does not distinguish between actual and apparent authority, but Whitfield viewed Harrison as turning on the notion that it was reasonable for officers to assume that a husband and wife would share use of the storage area. See Whitfield, 939 F.2d at 1074-75 (citing Harrison). But just as a comparable assumption of mutual use was not warranted in Whitfield itself, so it is not warranted here. The closed shoebox was not located in a storage area shared by a husband and wife; it was next to the defendant’s bed,[3] in an area his great-great-grandmother described as containing his “personal property.” Under these very different circumstances, it was not reasonable for the police to believe that Hicks had the necessary authority. Accordingly, the evidence recovered from the shoebox must be suppressed.
Our dissenting colleague argues that under Matlock, Peyton assumed the risk of this search. See Dissenting Op. at 562-63. We take a narrower view of the risk he assumed. To be sure, Peyton assumed the risk that Hicks would permit outsiders (including the police) into the room where he slept, and he thereby also assumed the risk that those outsiders would see any of his possessions left in plain view. Thus, had Peyton left a handgun lying atop his bed, we would not require its suppression. But it does not follow that Peyton also assumed the risk of Hicks’s permitting outsiders to rummage through his closed containers to discover items not in plain view. The dissent suggests that, under Donovan, it is enough that the shoebox itself was in plain view. See Dissenting Op. at 562-63. We think that misreads the key sentence of Donovan — quoted in full above, at 562-63 — which distinguishes between “objects in plain view” and “the interiors of ... enclosed space[s].” Donovan, 746 F.2d at 901-02; see also United States v. Rodriguez, 888 F.2d 519, 523-24 (7th Cir.1989) (“Many a closed container is accessible; [but] opening it requires justification .... Why a lack of privacy in the room implies a lack of a privacy interest in the contents of the containers remains a mystery.”).
The dissent also contends we have put cotenants like Hicks, who want the police to remove any contraband in a shared dwelling, in an untenable position. See Dissenting Op. at 562-63. We respectfully disagree. It cannot be that a cotenant’s desire that the police remove *556 any contraband creates in her common authority that does not otherwise exist. The mother in Whitfield would not have had the necessary authority simply by telling the agents that she ardently wished them to confíscate any evidence of her son’s wrongdoing. Moreover, our ruling does not leave cotenants like Hicks helpless: “The co-tenant acting on his own initiative may be able to deliver evidence to the police, Coolidge [v. New Hampshire, 403 U.S. 443, 487-489, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)] (suspect’s wife retrieved his guns from the couple’s house and turned them over to the police), and can tell the police what he knows, for use before a magistrate in getting a warrant.” Georgia v. Randolph, 547 U.S. 103, 116, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).
Finally, there is nothing in the Supreme Court’s recent decision in Fernandez v. California, — U.S.-, 134 S.Ct. 1126, 188 L.Ed.2d 25 (2014), that is inconsistent with our ruling. In that case, police sought to enter an apartment shared by Fernandez and his girlfriend, Roxanne Rojas, but Fernandez objected. The police then removed Fernandez and lawfully arrested him. Roughly an hour later, the police returned, obtained Rojas’s consent to search the apartment, and discovered various pieces of evidence later used against Fernandez. Id. at 1130-31. Fernandez challenged the search solely on the ground that, under Georgia v. Randolph, his earlier objection barred the subsequent consent search. Id. at 1131. The Court disagreed, holding that Randolph is limited to cases where, earlier objections notwithstanding, an objecting cotenant is physically present at the time police ask to search. Id. at 1134-37. That holding has no bearing on our case, which does not involve an objecting cotenant. Our case concerns the scope of a cotenant’s common authority, an issue not addressed in Fernandez for a simple reason: Fernandez never disputed that Rojas had the necessary common authority. Id. at 1188 (Thomas, J., concurring) (“[Petitioner does not contest that Rojas had common authority over the premises.”); see also People v. Fernandez, 208 Cal.App.4th 100, 145 Cal.Rptr.3d 51, 58 (2012) (no challenge to Rojas’s authority). Fernandez thus says nothing that undermines our analysis of Hicks’s authority.
Ill
As to the January 2010 search, Peyton asserts that the drugs and gun seized from the kitchen should have been suppressed because they are “fruit of the poisonous tree” of the July searches of the kitchen and shoebox. Under this venerable doctrine, evidence that would likely not have been found but for a Fourth Amendment violation must usually be suppressed. See generally United States v. Holmes, 505 F.3d 1288, 1292-94 (D.C.Cir.2007). First, as Peyton sees it, the police would not have sought Hicks’s consent to conduct a search of the kitchen in January without first having discovered the plates and razor blades in the kitchen cabinets during the portion of the July search that the district court found unlawful. Although we can understand why Peyton would try to take advantage of this finding (which the government did not appeal), we reject this argument, for we agree with the government that it strains credulity to think this was the reason for the January search of the kitchen. It seems far more likely, simply as a matter of sound police work, that the officers would have wanted to search the kitchen of a suspected drug dealer regardless of whether they had discovered evidence there before.
Peyton’s better argument is that the evidence seized in January is tainted by the illegal search of the shoebox in *557 July. The causal chain seems direct: the evidence discovered in the shoebox was the basis for Peyton’s indictment; the indictment led to the arrest warrant; and it was during the execution of the warrant that the officers sought and received Hicks’s consent to search the kitchen. Even so, we decline to decide in the first instance whether the evidence seized in January is the fruit of the unlawful search of the shoebox. We are a court of review, not of first view, and the district court, having concluded that the July search of the shoebox was legal, had no occasion to address this issue. We therefore vacate the portion of the district court’s order relating to the evidence seized in January and remand to let the district court have the first opportunity to address the matter, and, if it deems appropriate, to conduct additional fact-finding to supplement the record. See, e.g., United States v. Hill, 649 F.3d 258, 270 (4th Cir.2011); United States v. Valentine, 539 F.3d 88, 96 & n. 10 (2d Cir.2008). Our decision to remand is bolstered by how little space the parties devoted to this issue in their briefs. Both parties should have the opportunity to develop their arguments more fully before the district court.
If, on remand, the district court concludes there is a causal connection, it will likely need to address whether Hicks’s consent to the January search was “an act prior to discovery of the challenged evidence sufficient ‘to purge the primary taint’ and break the causal chain between the illegal government conduct and the evidence’s ultimate discovery.” Holmes, 505 F.3d at 1294. The district court should be guided by Holmes. There we noted that consent can purge the taint of police misconduct only if it is voluntary and not the product of “exploitation” of the earlier illegality. Id.; see also 4 LaFave, supra, § 8.2(d), at 101-04 & n. 133. In determining whether the police exploited the illegal shoebox search, the district court should consider the temporal proximity between that search in July and the discovery of the evidence in January, the presence of intervening circumstances, and, most importantly, the “purpose and flagraney” of the illegal shoebox search. See Holmes, 505 F.3d at 1294 (citing Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)).
IV
Federal Rule of Criminal Procedure 11 permits a defendant who has entered a conditional guilty plea to withdraw that plea if he “prevails on appeal.” Fed.R.Crim.P. 11(a)(2). Our decision to suppress the evidence in the shoebox undermines the first two charges in the superseding indictment, possession with intent to distribute crack cocaine and marijuana, respectively. The former was one of the two charges to which Peyton pled guilty. As such, we think there is a high “probability that the excluded evidence would have had a material effect on [Peyton’s] decision to plead, guilty” and therefore conclude that he is entitled to withdraw his plea. United States v. Leake, 95 F.3d 409, 420 n. 21 (6th Cir.1996); accord United States v. Latz, 162 Fed.Appx. 113, 121 (3d Cir.2005) (“[A] defendant ‘prevails on appeal’ only when he persuades the Court of Appeals to exclude a piece of evidence that is material to his case.”). Accordingly, upon the district court’s resolution of the remaining suppression issue, Peyton may choose whether to withdraw his guilty plea. If he does so, the government remains free to reinstate the charges it dismissed pursuant to the plea agreement as that agreement allows.

So ordered.

. The fact that the district court thought it was sufficient to address only the room as a whole does not mean Peyton’s argument below must have concerned only the room as a whole. See supra at 551-52; cf. Block, 590 F.2d at 540 & n. 7 ("Our review of the district court’s order makes it apparent that the court concluded that once authority to search the room itself was found, that authority extended to the interior of the footlocker in the room.... The decisive error, of course, and the one precisely under review here, is the ultimate conclusion that authority existed to consent to search of the footlocker, by whatever intermediate steps of reasoning it was reached.").

. It is this principle that makes Whitfield so important, not its factual similarity to this case. Cf. Dissenting Op. at 559-60.

. Unlike our dissenting colleague, we consider this an important fact that makes the case for apparent authority much weaker than if the shoebox had been, say, sitting by itself in the middle of the room.