**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 16, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KRISTIAN THOMAS,

    Defendant - Appellant.

No. 17-2033
(D.C. No. 1:15-CR-01500-MCA-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **MATHESON**, Circuit Judges.
_____

    Defendant-Appellant Kristian Thomas brings this direct criminal appeal. After Thomas was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e), he moved to suppress the evidence against him. The district court denied the motion to suppress. Thomas then entered a conditional guilty plea, and now appeals. We AFFIRM.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

On the evening of March 19, 2015, Thomas' girlfriend called 911 and reported that she was concerned about Thomas' welfare. ROA, Vol. III at 39–42. A police dispatcher in Albuquerque, New Mexico, informed the officers on patrol of the call. *Id.* Officer Yvonne Martinez fielded the call, and went to Thomas' residence. *Id.* She encountered a man who claimed to be Kristian Padilla, and determined that he was not in danger. *Id.*

Officer Martinez returned to her police car, drove a short distance away, and searched for further information on Kristian Thomas. *Id.* at 42, 49. She determined that the person she had spoken with was actually Kristian Thomas. *Id.* at 42–43. She also learned there was an outstanding warrant for Thomas' arrest on a misdemeanor charge. *Id.* at 43, 63. Because she had driven some distance from Thomas' residence, and because the warrant was only for a misdemeanor, Officer Martinez decided not to return to Thomas' residence to execute the warrant. *Id.* at 45, 47, 63.

One week later, on March 26, 2015, an Albuquerque police officer was on patrol and noticed a suspicious pickup truck. *Id.* at 17–18. The truck contained a passenger holding a large television. *Id.* at 18. Given that there were many residential burglaries and theft in that neighborhood, the officer believed the television might have been stolen. *Id.* After officers ran the license plate on the truck and determined the owner, they suspected the truck might be headed for a local pawn shop. *Id.* at 18–19. The police dispatcher sent Officer Martinez and one of her

colleagues to the pawn shop, and informed them of the background facts. *Id.* at 20, 34–35.

Upon arriving at the pawn shop, Officer Martinez recognized Thomas from the encounter a week earlier. *Id.* at 36. After a brief conversation, Officer Martinez informed her colleague that there was a warrant out for Thomas' arrest. *Id.* at 56, 67, 69. Officer Martinez's colleague then handcuffed Thomas. *Id.* at 67. Thomas then told the officers "that he was armed, at which point [an officer] removed a . . . Ruger .357 pistol from [Thomas'] pocket." *Id.* As the district court found, "Officer Martinez then verified the status of the warrant." ROA, Vol. I at 38; *see also* ROA, Vol. III at 37 (Officer Martinez testifying the warrant was "still active").

The government charged Thomas with being a felon in possession of a firearm. ROA, Vol. I at 10 (citing 18 U.S.C. § 922(g)(1)). A month later, a grand jury indicted Thomas for violations of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e). *Id.* at 14–15.

Thomas moved to suppress the evidence of his arrest, including the firearm found in his pocket. *Id.* at 16–23. The district court denied the motion in a written order. *Id.* at 36–39. Thomas then entered a conditional guilty plea under Federal Rule of Criminal Procedure 11(a)(2), which reserved the right to appeal the denial of his motion to suppress. *See generally* ROA, Vol. II. The district court sentenced

3

Thomas to 92 months' imprisonment and entered the judgment. ROA, Vol. I at 48.

Thomas filed this timely appeal.[1] *Id.* at 53–54.

## II

In an appeal from an order denying a motion to suppress, we review all legal

determinations de novo and all factual determinations for clear error. *United States*

*v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011).

The Fourth Amendment protects "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures[.]"

U.S. Const. amend. IV. Consistent with the Fourth Amendment, a police officer can

only make an arrest if the officer has probable cause. *See Michigan v. Summers*, 452

U.S. 692, 700 (1981). Probable cause is present when "facts and circumstances

within the officer's knowledge . . . are sufficient to warrant a prudent person, or one

of reasonable caution, in believing, in the circumstances shown, that the suspect has

committed, is committing, or is about to commit an offense." *Michigan v.*

*DeFillippo*, 443 U.S. 31, 37 (1979). "[P]robable cause is a flexible, common-sense

standard" that "does not demand any showing that such a belief be correct or more

likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983).

---

[1] In this appeal, Thomas' counsel first filed an *Anders* brief on June 15, 2017. Doc. #10475215 (citing *Anders v. California*, 386 U.S. 738 (1967)). However, after the court asked Thomas' counsel for further explanation of why he believed this appeal was frivolous, Thomas' counsel filed an amended opening brief on November 16, 2017, without citation to *Anders*. Doc. #10514434. The government responded, and Thomas replied, making this matter ripe for decision.

Thomas argues Officer Martinez did not have probable cause to arrest him because, even though Officer Martinez knew there had been a warrant for Thomas' arrest on a misdemeanor charge a week earlier, Officer Martinez did not confirm that the warrant was still active. In Thomas' view, it was theoretically possible that he could have been arrested on the warrant, processed, and released on bond in the week since Officer Martinez last encountered him. Or, alternatively, Thomas argues the warrant could have been quashed or withdrawn.

At bottom, Thomas raises the issue of whether "a prudent person, or one of reasonable caution," *DeFillippo*, 443 U.S. at 37, when confronted with a suspect who had a misdemeanor warrant for his arrest a week earlier, could reasonably believe without verification that the arrest warrant was still active. The district court held that such a belief was reasonable, and that Officer Martinez had probable cause to believe the misdemeanor arrest warrant was still valid. We agree.

Though the Tenth Circuit has not encountered this unusual factual scenario, the D.C. Circuit decided a case on similar facts in *United States v. Hewlett*, 395 F.3d 458 (D.C. Cir. 2005). In *Hewlett*, an FBI agent learned in April 2002 that there was a warrant for Hewlett's arrest on murder charges in Maryland. *Id.* at 459. The officer did not make an arrest at that time, but checked the computer system to verify the warrant. *Id.* Eleven months later, the officer received a tip that Hewlett was eating in a restaurant in Washington, D.C. *Id.* The FBI agent and two other officers arrived at the restaurant and arrested Hewlett on the murder warrant, even though none of them had recently checked whether the warrant was still active. *Id.* The D.C. Circuit

5

held that it "cannot conclude that the passage of eleven months so diminished" the belief that there was a warrant for Hewlett's arrest "as to reduce it below the level of probable cause." *Id.* at 462. "[W]hile it remained possible that the warrant had been quashed or withdrawn," the D.C. Circuit still held that it was "reasonable for the arresting officers to believe that the warrant, and the finding of probable cause that it evidenced, remained valid." *Id.*

Thomas argues that *Hewlett* is factually distinguishable from the instant case. Specifically, the D.C. Circuit noted that the seriousness of Hewlett's murder charge made it unlikely that he could have received bond or been tried and acquitted in only 11 months. *Id.*

Yet, there were still many theoretical possibilities allowing Hewlett to be lawfully free in Washington, D.C., despite the existence of the warrant 11 months earlier. For instance—though perhaps not likely—it is possible that Hewlett could have posted bond if he had been arrested. Further, the State of Maryland could have withdrawn the warrant. Ultimately, though, the most likely scenario at the moment the officers encountered Hewlett was that Hewlett had never been arrested, and was still wanted pursuant to the warrant the FBI agent saw 11 months earlier.

Thus, *Hewlett* posed circumstances which were similar to those present here. Like the FBI agent in *Hewlett*, Officer Martinez perhaps could have been more diligent in checking the status of the warrant before executing an arrest. However, like *Hewlett*, the theoretical possibility that the warrant was no longer active does not in itself make it unreasonable for Officer Martinez to believe there was still an active

6

warrant for Thomas' arrest. Only one week had passed since Officer Martinez's encounter with Thomas, and, given Thomas' presence on the street, it was reasonable to assume that Thomas had not been arrested or that the warrant had not been otherwise resolved in that brief time period. Further, after arresting Thomas and securing the scene by removing Thomas' firearm, Officer Martinez promptly checked the status of the warrant to confirm that it was still active.

Like the D.C. Circuit in *Hewlett*, we conclude that the facts and circumstances within Officer Martinez's knowledge were sufficient for a prudent person to believe there was an active warrant for Thomas' arrest.[2] *See DeFillippo*, 443 U.S. at 37. Therefore, the officer's arrest was valid, and we affirm the district court's denial of the motion to suppress.

---

[2] There may be an argument that even if Officer Martinez lacked probable cause to believe the warrant was still active, Officer Martinez's subsequent verification of the warrant's validity attenuated any unlawful actions. *See Utah v. Strieff*, 136 S. Ct. 2056, 2061–63 (2016) (holding that even though an officer unlawfully detained a suspect, the later discovery of a warrant to arrest the suspect attenuated the unlawful detention and made the arrest Constitutional). Yet, the government did not make that argument in the district court. *See* Govt. Br. at 8 n.6 (acknowledging "the United States has never made an attenuation argument in this case"). It is therefore forfeited. *United States v. Hernandez*, 847 F.3d 1257, 1262 (10th Cir. 2017) (holding the government "waived" an attenuation argument by not raising it in the district court).

## III

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge