[Cite as *State v. Henize*, 2019-Ohio-5202.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 19AP-89 |
| | | (C.P.C. No. 18CR-1028) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Alexander F. Henize, | : | |
| Defendant-Appellant. | : | |

_____

D E C I S I O N

Rendered on December 17, 2019

_____

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard.*

**On brief:** *Campbell Law, LLC,* and *April F. Campbell,* for appellant.

_____

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Alexander F. Henize, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of multiple drug-related offenses. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On March 2, 2018, the Franklin County Grand Jury indicted Henize on two counts of illegal manufacture of drugs in violation of R.C. 2925.04; five counts of aggravated trafficking in drugs in violation of R.C. 2925.03; three counts of aggravated possession of drugs in violation of R.C. 2925.11; one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16; one count of possession of heroin in violation of R.C. 2925.11; two counts of receiving proceeds of an offense subject to forfeiture proceedings in

violation of R.C. 2927.21; one count of trafficking in heroin in violation of R.C. 2925.03; and one count of endangering children in violation of R.C. 2919.22. A firearm specification was attached to most of the offenses. Henize initially pleaded not guilty, and he moved to suppress evidence against him that led to multiple charges in the indictment.

{¶ 3} In May 2018, the trial court held a suppression hearing, and the following three individuals testified: Columbus Division of Police Officers Nathaniel Harp and David Schulz, and Vania Ramirez-Chavez. Their testimony related to the circumstances surrounding Officer Harp's opening of a closed Home Depot bucket during a search at the residence of Henize and Ramirez-Chavez on December 26, 2017.

{¶ 4} Officers Harp and Schulz both testified that, sometime during the first few hours of December 26, 2017, they were dispatched to 3894 Preserve Crossing Boulevard in Columbus based on a report of domestic violence. It was reported that the victim, later identified as Ramirez-Chavez, was being held at gunpoint by her boyfriend, later identified as Henize. When the officers arrived at the scene, Ramirez-Chavez's mother flagged them down and provided very similar information to what had been reported earlier. Officer Harp could see Ramirez-Chavez holding a young child at a third-floor window of the three story townhome-style apartment. The officers asked her to come down and talk to them. Ramirez-Chavez indicated that she could not comply with that request because Henize, who had a firearm, was holding her against her will.

{¶ 5} Officer Harp instructed other officers to position themselves for a possible barricade situation, and they started the process of evacuating the area. Approximately 20 minutes later, Henize came to the third story window and communicated with Officer Harp, who convinced Henize to exit the apartment. It took Henize longer than necessary to exit the apartment, but when he did, the officers arrested him. Once Henize was arrested, the officers cleared the apartment to make sure there were no other threats to their or the victim's safety. They began to interview Ramirez-Chavez on the second floor of the apartment. Ramirez-Chavez indicated to the officers that she resided with Henize at the apartment and further stated that Henize had held a gun to her head and threatened to kill her. The officers therefore were interested in recovering the weapon as part of their investigation of Henize's conduct.

{¶ 6}　According to the officers' testimony, Ramirez-Chavez was asked if the officers could search for the firearm, and she consented to that search. She also indicated to the officers that the weapon that had been used was somewhere on the second floor of the apartment, which is where the kitchen was located. "She said that [the officers] could search whatever [they] needed to find the handgun." (May 7, 2018 Tr. at 38.) One of the officers discovered a rifle on top of a cabinet in the kitchen and displayed it to her. She indicated that the rifle was not the weapon Henize had used against her because he had used a much smaller firearm. As they continued the search for the weapon that had been held to her head, Officer Harp noticed an orange Home Depot bucket on the floor of the kitchen. The bucket, which had a lid, seemed out of place and was more than sufficient size to hold a handgun. Officer Harp opened the lid to reveal a handgun, drugs, and cash. Upon making this discovery, the officers halted the search and contacted their supervisor. Once a search warrant was obtained, Officer Harp assisted a narcotics detective in conducting a more thorough search of the apartment.

{¶ 7}　Ramirez-Chavez was called as a witness on behalf of Henize. Ramirez-Chavez, Henize's live-in girlfriend and mother to his child, testified that they had a domestic dispute on the night he was arrested. Henize had been financially supporting her for the previous three years. According to Ramirez-Chavez's testimony, she informed the police that a firearm was involved in the domestic dispute, but she did not tell them the type of firearm. She directed the police to the area above a cupboard where they retrieved a firearm. The police did not ask Ramirez-Chavez if the firearm retrieved was the one used in the dispute, and they did not seek consent to conduct an additional search for another firearm. She acknowledged at the hearing that the firearm retrieved above the cabinetry was not the one Henize had placed at her head that night. She additionally testified that she did not give consent for the police to search the inside of the Home Depot bucket. She added, "I don't even recall an orange Home Depo[t] bucket." (May 7, 2018 Tr. at 46.)

{¶ 8}　In June 2018, the trial court overruled Henize's motion to suppress, finding that the challenged search was lawful because Ramirez-Chavez voluntarily consented to it. Henize subsequently entered a plea of no contest to the offenses charged in the indictment. In January 2019, the trial court entered judgment convicting Henize of those offenses and sentencing him to a total of 18 years in prison. In August 2019, the trial court corrected the

January 2019 judgment entry to properly reflect that Henize pleaded no contest to the charges, instead of guilty as originally indicated.

{¶ 9}    Henize timely appeals.

## II.  Assignment of Error

{¶ 10}  Henize assigns the following error for our review:

> Henize's motion to suppress should have been granted: Ramirez-Chavez had no apparent authority to allow the officers to open the Home Depot bucket without a warrant.

## III.  Discussion

{¶ 11}  In his sole assignment of error, Henize asserts the trial court erred in denying his motion to suppress.  Henize contends that Ramirez-Chavez did not have apparent authority to permit the officers to search the contents of the Home Depot bucket, and that no other exception applied to permit the search.  In particular, he asserts there was no evidence that the Home Depot bucket was subject to mutual use, the plain view doctrine did not apply to cure the warrantless search of the bucket, the search was not authorized as a search incident to arrest, and the officers conceded that there was no officer safety concern, no destruction of evidence concern, or a risk of an ongoing emergency.  This assignment of error lacks merit.

{¶ 12}  " 'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.) *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 13}  The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Article I, Section 14, of the Ohio Constitution, prohibits the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies.  *State v. Mendoza*, 10th

Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357 (1967), *superseded by statute on other grounds*; *see Collins v. Virginia*, 138 S.Ct. 1663, 1670 (2018) (search of a home absent a warrant is "presumptively unreasonable"). Thus, "[w]hen a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 18, citing *Athens v. Wolf*, 38 Ohio St.2d 237, 241 (1974).

{¶ 14} "One specifically established exception to the warrant requirement is 'a search that is conducted with consent.' " *State v. Hawkins*, 10th Dist. No. 15AP-35, 2016-Ohio-1404, ¶ 98, quoting *State v. Portman*, 2d Dist. No. 2013-CA-68, 2014-Ohio-4343, ¶ 11, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). "Further, '[c]onsent to search can be "obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." ' " *Hawkins* at ¶ 98, quoting *Portman* at ¶ 11, quoting *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Thus, when a third party who possesses common authority over the property voluntarily consents to the search, law enforcement officers may conduct a search without a warrant. *Hawkins* at ¶ 98, citing *State v. Reynolds*, 9th Dist. No. 19062, 1999 Ohio App. LEXIS 5005 (Oct. 27, 1999), citing *United States v. Matlock*, 415 U.S. 164 (1974). " ' "Common authority" exists when two or more persons have joint access or control over the property, each has the right to consent to permit inspection, and each has assumed the risk that any one of them might so consent.' " *Hawkins* at ¶ 98, quoting *Reynolds*, citing *Matlock* at 172, fn. 7.

{¶ 15} Moreover, " '[e]ven if an officer erroneously believes that a third-party is authorized to give consent, using an objective standard, third-party consent is valid if an officer looking at the then-available facts could reasonably conclude that the third-party had apparent authority to consent.' " *Hawkins* at ¶ 99, quoting *Portman* at ¶ 13. "The standard for measuring the scope of a [person's] consent under the Fourth Amendment is that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the [consenting person]?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991), citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990). "The scope of a search is generally defined by its expressed object." *Id.* Regarding the search of a container, such a search "is effective only when given by one with common authority over"

the "effects sought to be inspected." (Citation omitted.) *State v. Bell*, 8th Dist. No. 62325, 1993 Ohio App. LEXIS 2383 (May 6, 1993); *see United States v. Melgar*, 227 F.3d 1038, 1041 (7th Cir.2000) (a person with common authority over the premises is presumed to have authority over closed containers found there, unless the police receive positive information to the contrary). Therefore, the scope of a consent to search an area for an object extends to the area in which the object of the search may be found and generally includes the opening of containers where that object reasonably may be secreted within that area. *See Jimeno.*

{¶ 16} In *Jimeno*, the police officer informed the suspect that he believed the suspect "was carrying narcotics, and that he would be looking for narcotics in the [suspect's car]." *Id.* at 251. The suspect granted the police officer permission to search his car, and "did not place any explicit limitation on the scope of the search." *Id.* In view of these circumstances, the United States Supreme Court concluded that "it was objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs." *Id.* The *Jimeno* court further explained, "[a] suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.* at 252.

{¶ 17} At issue here is whether Ramirez-Chavez had apparent authority to give consent for the officer's search of the closed Home Depot bucket in the kitchen of the apartment where she and Henize lived together. We find the evidence indicated she had authority to consent to a search of the apartment for the firearm that Henize used against her in the domestic dispute, and that the scope of the consent she gave included authorizing the police to look in places where that firearm reasonably could be secreted, which included the bucket. According to Henize, Ramirez-Chavez was unaware of the presence of the bucket in the apartment and the container was not subject to mutual use. However, the police officers had no information to suggest that a bucket on the floor of the kitchen of the apartment they shared was not subject to mutual use. *Compare State v. Johnson*, 7th Dist. No. 15 JE 20, 2017-Ohio-5708, ¶ 23-24 (court concluded that the searching officers had at least some knowledge that the book bag subject to the search might belong to a non-

consenting person based on a prior interaction, thus undermining the trial court's determination that the consenting person had common or apparent authority over the bag). Furthermore, unlike a suitcase, backpack, purse, or other similar container, utility buckets are not commonly used to hold personal effects. Even so, utility buckets typically are of a size that could hold a handgun. On these facts, the search of the Home Depot bucket in the kitchen of the apartment was reasonable. Because the search was conducted with consent, it is unnecessary to analyze Henize's arguments concerning other exceptions to the warrant requirement.

{¶ 18} Because the trial court did not err in denying Henize's motion to suppress, we overrule his sole assignment of error.

## IV. Disposition

{¶ 19} Having overruled Henize's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and NELSON, JJ., concur.